UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lewis Mathews,

Plaintiff,

v.

Fairview Health Services,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-2151 ADM/AJB

---

Ruth Y. Ostrom, Esq., and Mark A. Greenman, Esq., Greenman & Ostrom, Minneapolis, MN, appeared for and on behalf of Plaintiff.

Paul Zech, Esq., and Janet C. Ampe, Esq., Felhaber Larson Fenlon & Vogt, Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

This matter arises from medical leave taken by Plaintiff Lewis Mathews ("Mathews") pursuant to the terms of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. On February 25, 2003, counsel presented oral arguments before the undersigned United States District Judge on Defendant Fairview Health Services' ("Fairview") Motion for Summary Judgment [Docket No. 10]. Mathews alleges Fairview violated his rights under FMLA when it failed to restore him to the position he held at Fairview prior to his medical leave. Fairview contends Mathews was unable to fully perform the job requirements and that competing safety regulations justified its refusal to reinstate him. For the reasons set forth below, Fairview's Motion is denied.

FILED 4/7/03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENT'D ________
DEPUTY CLERK ________

## II. BACKGROUND

The facts of this case are largely uncontested. In July 1997, Fairview hired Mathews as a part-time truck driver/materials handler, a position he fully performed until October 1999. The job entailed driving, loading and unloading of carts 20 hours per week. The physical requirements specified an ability to lift and carry up to 50 pounds occasionally, to push and pull on wheels 74 or fewer pounds frequently, and to push and pull on wheels between 75 and 100 pounds occasionally. Physical Requirements Analysis at 1 (Ampe Aff. Ex. Reply 1). The driving component of the job was subject to regulation by the United States Department of Transportation ("DOT"), which requires drivers of commercial motor vehicles to meet specific physical qualifications. See 49 C.F.R. § 391.41.

On October 27, 1999, Fairview granted Mathews retroactive FMLA leave for installation of a pacemaker. Fairview's policy regarding employees taking leave under FMLA requires individuals to consult with Fairview's Health Services Department and to furnish medical documentation of the ability to resume work prior to reinstatement. Nurse Carol Fritz ("Fritz") was the Health Services representative in charge of processing medical leaves of absence. On November 30, 1999, Mathews provided Fritz with a return-to-work slip from Dr. Daniel J. Stein ("Dr. Stein"), Mathews' internist, who initially placed Mathews on leave from work. See Note from Stein of 11/30/99 (Greenman Aff. Ex. H). The release stated that Mathews was able to return to work without restriction and that he should not work more than 40 hours in a two-week period. Id. At this time, Fritz referred Mathews to his supervisor, Kathy Fulks ("Fulks"), who informed Mathews that he needed to undergo a DOT physical before returning to his position.

The examination was scheduled for December 3, 1999. The day before the appointment,

Fritz wrote a letter to Dr. James Anderson ("Dr. Anderson"), the Occupational Medical Health Specialist who would be performing the physical. Fritz advised him that she was referring Mathews "because he has been on medical leave of absence" due to pacemaker insertion and explained the duties of Mathews' position. Letter from Fritz to Anderson of 12/02/99 (Greenman Aff. Ex. J). In conclusion, she wrote: "Please evaluate his ability to fully do his job. His doctor did release him to return to work without restrictions, but not to work more than 40 hours in a 2 week period of time." Id.

After examining him, Dr. Anderson found that Mathews passed the DOT requirements and signed the verifying Medical Examiner's Certificate. See Physical Examination of Drivers form (Greenman Aff. Ex. K). In a supplemental, handwritten note addressed to Fritz, Dr. Anderson expressed:

> Mr. Mathews meets the DOT specs, but I think he's marginal for handling 60# dock plates and pushing 500# carts. In ideal circumstances, with only occasional exertion I think he would be OK, but that assumes no extenuating circumstances. He also has not had a stress EKG for several years. He does see his cardiologist Dec. 14. At this time I would not approve him for full duty as the job description lays it out.

Letter from Anderson to Fritz of 12/3/99 (Greenman Aff. Ex. L) (emphasis in original).

When Mathews sought to resume work, Fulks informed him that he had to provide a work release from a cardiologist before Fairview would reinstate him. At this point, the parties' versions of the events diverge. Mathews contends he requested and obtained a work authorization from a cardiologist at Minneapolis Heart Clinic while at an appointment with Dr. Adam T. Lottick on December 8, 1999, and that he provided the note to Fritz who again directed him to Fulks. Mathews states that Fulks then informed him that there were no driving positions available for him and that he would not be restored to his job. Fairview denies any knowledge of

this note and argues that because there is no record of its existence beyond Mathews' testimony, it cannot be considered admissible evidence.

Mathews was then directed to Fairview's Career Resource Center for alternative placement. Fairview claims this referral was done because Mathews had not yet submitted return-to-work clearance from a cardiologist, while Mathews asserts he acceded to looking for another job because Fairview refused to reinstate him to his previous position. In January 2000, Mathews took a janitorial position with a lower wage, more hours, and different schedule and responsibilities. The parties agree that this was not an equivalent position under the FMLA definition.

On August 30, 2000, Mathews filed a charge of discrimination with the Minnesota Department of Human Rights, asserting Fairview failed to restore him to his driving position despite his ability and desire to return. Ampe Aff. Ex. A-7. To review this matter, Mathews met with Corporate Human Resources Director Cheryl Streit ("Streit") on March 13, 2001. At the meeting Mathews provided Streit with an itemized list of his concerns and complaints. Among other things, he articulated: "I want back pay from the time I pass my D.O.T.Physical Dec.3/1999 I was under no restrictions According to DR. Lottick and DR. Stein." Greenman Aff. Ex. N ¶ 1 (sic). Further, Mathews expressed his desire for reinstatement and his frustrations with Fairview, writing that when he sought to resume work, "I was Informed I no Longer Had A Job. . . . I Passed My D,O,T, Physical with no Restrictions And was Given A Continuous Runaround About the Driving job." Id. ¶¶ 6, 8 (sic). Mathews then learned for the first time that Fairview claimed not to have seen or received his cardiologist clearance of December 1999.

Following this meeting, Mathews secured and provided Fairview another return-to-work

release from the Minneapolis Heart Clinic, signed by his cardiologist, Dr. William B. Nelson ("Dr. Nelson"), dated April 5, 2001. In the Report of Work Ability, Dr. Nelson stated that Mathews was "able to return to work without restrictions as of 12/14/99." Report of Work Ability (Greenman Aff. Ex. O). By checking the appropriate boxes, Dr. Nelson authorized Mathews to lift or carry and push or pull up to 50 pounds occasionally. Id.

By memorandum of June 1, 2001, the director of Mathews' department informed him that he would not be restored to his former duties because the lifting restrictions contained in Dr. Nelson's release rendered him unqualified for the position. Memorandum from Huntley to Mathews of 6/1/01, at 1 (Greenman Aff. Ex. P).

Mathews alleges Fairview's failure to reinstate him after ample medical documentation violated the FMLA. Fairview asserts its entitlement to certification from a cardiologist before permitting Mathews to resume his former position and that there is insufficient evidence of the first cardiologist clearance note to oppose summary judgment. In the alternative, it asserts Mathews' damages must be limited to the time period ending April 5, 2001, due to his inability to perform an essential job requirement and failure to mitigate his damages.

## III. DISCUSSION

Summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials," but must demonstrate the presence of a genuine factual dispute for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957

(8th Cir. 1995). If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Id.

**A. Failure to Restore**

FMLA entitles eligible employees to take leave from work for qualifying personal or family medical reasons. 29 U.S.C. § 2612(a)(1). Upon return from FMLA leave, employees have the right to be restored by the employer to their former or an equivalent position. Id. § 2614(a)(1)(A)&(B); 29 C.F.R. § 825.214(a). To establish this entitlement, Mathews must show: (1) that he was eligible for leave under FMLA, (2) that he took FMLA leave for the intended purpose, (3) that he sought to be reinstated in his former position, and (4) that Fairview denied or interfered with his right to restoration. Routes v. Henderson, 58 F. Supp. 2d 959, 992 (S.D. Ind. 1999). An employer is not mandated to restore the employment, however, if the employee "is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition." 29 C.F.R. § 825.214(b). Further, before reinstating an employee, an employer may require the employee, pursuant to a uniformly-applied policy, to present medical certification of the ability to resume work. 29 C.F.R. § 825.310(a).

The parties do not dispute the fact or propriety of Mathews' leave, nor that he sought restoration. The focal issue in this case is whether or not Fairview wrongfully refused to reinstate Mathews in his truck driving position.

Mathews argues the note from Dr. Stein clearing him to return to work without restriction triggered Fairview's duty to restore him to his job without further delay. Fairview counters that, particularly in light of the applicable DOT regulations, it was justified in demanding fitness-for-

duty certification from a cardiac specialist.

The relevant FMLA regulation states that the certification an employer may request from an employee's health care provider "need only be a simple statement of an employee's ability to return to work," and that after such certification is provided, the employer may not postpone reinstatement. Id. § 825.310(a), (c); see also Cooper v. Olin, 246 F.3d 1083, 1090 (8th Cir. 2001). If the employer has additional concerns or questions regarding the employee's fitness, it may, after obtaining the employee's permission, seek clarification from the certifying health care provider. Cooper, 246 F.3d at 1091 (citing 29 C.F.R. § 810.310(c)). However, "[n]o second or third fitness-for-duty certification may be required." 29 C.F.R. § 825.310(e). Further, the employer may not delay the employee's reinstatement while requesting or waiting for clarification. Id. Accordingly, the procedures and practices delineated in FMLA represent a prohibition on an employer making "its own determination of whether an employee is fit to return from FMLA leave." Albert v. Runyon, 6 F. Supp. 2d 57, 62 (D. Mass. 1998).

Dr. Stein, Mathews' internist, is a "health care provider," as defined by the pertinent regulation. See 29 C.F.R. § 825.118(a)(1) (defining health care provider as "(1) A doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the state in which the doctor practices . . . "). Fairview cites nothing in the regulations that permits an employer to require the certification from a specialist, as opposed to a general practitioner. Under FMLA, only a basic statement of fitness for duty "from the employee's health care provider" is necessary. 29 C.F.R. § 825.310(a), (c). Therefore, Dr. Stein's return-to-work note adequately cleared Mathews to immediately resume the duties of his position or be given an

equivalent position.[1] See Cooper, 246 F.3d at 1091. The question thus becomes whether or not the DOT rules applicable to Mathews' driving position demand or permit Fairview to request additional, specific certification of Mathews' health condition.[2]

Because Mathews' position was subject to DOT regulation and certification, Fairview argues, safety concerns regarding Mathews' non-driving duties justify Fairview's refusal to reinstate him. Mathews' counters that Dr. Anderson's opinion and comments with respect to Mathews' physical capacity for lifting and pushing, and Fairview's actions based thereon, went beyond the scope of the DOT standards and examination.

The DOT regulations Fairview relies on make no reference to FMLA reinstatement. Neither do they explicitly allow it to refuse or condition driver certification, based on reservations about non-driving aspects of a position, on clearance from a specialist. As stated in the regulation section cited by Fairview, the purpose of the DOT physical examination is to determine whether a driver has any conditions that may "affect the driver's ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.43(f). While 49 C.F.R. § 391.43 states that

---

[1] Accordingly, the dispute over the existence of the note of December 1999 does not affect the FMLA analysis and need not be considered for purposes of the instant Motion.

[2] Mathews contests Fairview's right to subject him to examination for re-certification in the first place, arguing that pacemaker installation is not a physical "injury or disease." The DOT regulation cited by Fairview in support of its right to require Mathews to undergo a DOT physical exam prior to resumption of his duties, states:

> Persons who must be medically examined and certified in accordance with Sec. 391.43 as physically qualified to operate a commercial motor vehicle:
>
> . . .
>
> (c) Any driver whose ability to perform his/her normal duties has been impaired by a physical or mental injury or disease.

49 C.F.R. § 391.45. This subsection does not include a definition of "injury" or "disease" and the parties do not reference one.

"[h]istory of certain conditions may be cause for rejection [or] [i]ndicate the need for further testing and/or require evaluation by a specialist," it specifies no procedure for such situations, other than to discuss the conditions with the driver and advise him or her to "take the necessary steps." Id. § 391.43(f). For DOT purposes, certification is complete upon the medical examiner's finding and properly recording that the employee is "physically qualified to drive a commercial motor vehicle in accordance with § 391.41(b)."[3] Id. § 391.43(g). No requirement of evaluation of non-driving responsibilities appears on the face of these regulations, nor does any explicit authorization to delay reinstatement or certification based on non-driving criteria.

However, a form attached to and referenced in the regulations does indicate, in a section entitled "Instructions to the Medical Examiner," that an examining doctor may consider and evaluate fitness for non-driving job duties. See 49 C.F.R. § 391.43(f) at attached Medical Examination Report form. It instructs that "[i]f the medical examiner determines that the driver is fit to drive and also able to perform non-driving responsibilities as may be required, the medical examiner signs the medical certificate." Id. (emphasis added). It also states that history of "certain conditions" may suggest the need for "more stringent examination perhaps by a medical specialist" and that the advisability of such action is usually determined by the examiner "in light of the driver's job responsibilities," schedule, and safety risks. Fairview contends that this text allows an examiner to require a return-to-work clearance from a specialist.

While these instructions may intimate a doctor's ability to withhold or postpone DOT certification for medical reasons beyond those enumerated in § 391.41, the language of

[3] Section 391.41(b) prescribes physical qualifications drivers must possess to obtain DOT certification to drive a commercial motor vehicle.

§ 391.43(f) and (g) discussed above suggests the opposite conclusion or, at minimum, results in an unclear expression of the medical examiner's rights and limitations. This lack of clarity, however, need not be resolved in this case because of the result of Mathews' DOT physical.

After completing the examination, Dr. Anderson specifically noted that Mathews met the DOT specifications and signed the Medical Examiner's Certificate, effective for a two-year period, confirming Mathews' qualification under the DOT standards. Physical Examination of Drivers form (Greenman Aff. Ex. K). Notably, Dr. Anderson certified: "In accordance with the Federal Motor Carrier Safety Regulations (49 CFR 391.41 through 391.49) and with knowledge of his/her duties, I find him/her qualified under these regulations." Id. Thus, whether or not the ambiguous wording in § 391.43 permitted Dr. Anderson to refuse or delay DOT certification based on non-driving duties and/or pending referral to a cardiologist, he did not do so. Instead, he completed and signed the Medical Examiner's Certificate and thereby authorized Mathews, for purposes of the DOT, to return to work as a commercial truck driver.

Arguably, Dr. Anderson could have chosen to postpone DOT certification and direct a referral to the cardiologist in order to obtain more detailed findings as to Mathews' fitness for non-driving responsibilities. Under the undisputed facts, however, Dr. Anderson certified Mathews to perform his driving position. With the necessary DOT standards and documentation thus satisfied, the additional complexity of competing regulatory schemes disappears from the case and the analysis returns to the parties' rights and obligations under FMLA.[4]

---

[4] Fairview's position that this alleged right to demand specialist evaluation for DOT certification somehow provides the implicit concomitant right to condition FMLA reinstatement on release from a specialist, despite Mathews' obtaining his DOT certificate, is wholly unsupported by legal authority. This assertion is especially dubious given that "the right of restoration is a substantive statutory right that is guaranteed" by FMLA. Routes, 58 F. Supp. 2d

Fairview's solicitation of Dr. Anderson's opinion regarding full performance of the lifting, pushing, and pulling requirements of the position and its resultant demand for documentation from a cardiologist prior to restoring Mathews to his position represented an independent medical judgment beyond that necessary to meet the regulatory requirements of the DOT and unsupported by FMLA and the relevant case law. See Letter from Anderson to Fritz of 12/3/99 (Ampe Aff. Ex. A-4). While likely done in good faith and for legitimate safety considerations, this type of medical assessment by an employer is prohibited by FMLA. See 29 C.F.R. § 825.310; Albert, 6 F. Supp. 2d at 62. After Mathews obtained a fitness-for-duty release from his health care provider and was cleared under the DOT regulations, Fairview's only option, other than outright reinstatement, was to seek clarification from Dr. Stein of the unrestricted clearance to return to work, restoring Mathews to his position in the meantime. See Cooper, 246 F.3d at 1091; Albert, 6 F. Supp. 2d at 63.

Though Fairview's concern for the safety of its employees and those affected by the performance of their duties is understandable, the DOT and FMLA regulations provide the proper framework for evaluating, and govern the procedures for assessment of Mathews' physical fitness. Fairview acknowledges that Mathews passed the DOT physical and met the applicable qualifications. As such, the DOT standards and mandates were no longer at issue. Fairview cites no authority contradicting the explicit provisions of FMLA that establish the contours and limits of an employer's ability to demand medical certification prior to restoring an employee to his position. Accordingly, summary judgment on Mathews' failure to restore claim is denied.

---

at 994 (internal citation omitted).

**B. Limitation on Damages**

Fairview argues in the alternative that Mathews' may not recover damages for any time after April 5, 2001, because from this point he was unable to perform the essential functions of his former position and therefore not entitled to restoration under FMLA.[5] As noted above, FMLA regulations provide that an employee does not have a right to return to a former or equivalent position "if the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition." 29 C.F.R. § 825.214(b). An employer invoking this defense to reinstatement has the burden of proving it. Routes, 58 F. Supp. 2d at 992.

Fairview contends that Dr. Nelson's April 5, 2001 Report of Work Ability unequivocally establishes that Mathews could not perform an essential pushing and pulling function of his position, as set forth in the job description. Physical Requirements Analysis (Ampe Aff. Ex. Reply 1). The requirements of Mathews' position included pushing and pulling on wheels of weights of less than 75 pounds frequently and of weights of 75 to 100 pounds occasionally. Id. In completing the release, Dr. Nelson checked the box to the left of the statement: "Patient is able to work without restrictions as of 12/14/99." Report of Work Ability (Ampe Aff. Ex. A-9). However, in the lower section, which lists specific physical tasks, he apparently restricted Mathews to pushing or pulling up to 50 pounds occasionally, checking this box without comment. Id. Fairview thus asserts that it has established Mathews' inability to perform an

[5] Fairview also seeks to limit Mathews' damages on a theory of failure to mitigate. Mathews' evidence of his desire to return to driving and his resort to finding alternate placement through the internal Career Resource Center belies this assertion. See Greenman Aff. Ex. N; Mathews Aff. ¶¶ 7, 8.

essential function of the job as of the date of Dr. Nelson's note.

Mathews submits that Dr. Nelson's purported restriction does not indicate whether it applies to pushing and pulling weight on wheels and therefore does not prove Mathews could not perform an essential job requirement. Further, he argues Fairview's knowledge and acceptance of the physical restrictions he was under at the time of his hiring and throughout the course of his employment defeat any assertion of lack of ability to perform the job. Mathews claims he was hired with the same restrictions Fairview now asserts render him unable to fulfill the job description.

A copy of a handwritten note proffered by Mathews states that on July 3, 1997, as part of Mathews' commencement of employment at Fairview, his doctor supplied Fairview with test results indicating that he could "lift freq. 25 lbs, intermittent 50 lbs [and] push heavy carts." Note from Bartholomew of 7/3/97 (Greenman Aff. Ex. A). Notably, this document does not specify the meaning of "heavy" carts and makes no express reference to push/pull maximum capability. Id. Thus, on its face, it does not contain restrictions identical to those indicated by Dr. Nelson or that necessarily prevent Mathews from performing any essential function. Id.

Though not conclusive, the ambiguity of Dr. Nelson's clearance and the evidence of some physical restrictions throughout Mathews' employment are sufficient to raise a dispute of material fact on the question of ability to perform, particularly in light of Fairview's burden of proof on this issue. See Routes, 58 F. Supp. 2d at 993 (finding employer's evidence inadequate and noting that confusion or concern over an employee's ability to perform an essential function of the job should be addressed by requesting clarification from the health care provider). Summary judgment on limitation of damages is denied.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 10] is **DENIED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: April 7, 2003